IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Dwayne Manning, #16012-056,<br><br>                    Plaintiff,<br><br>          vs.<br><br>NFN Wells, Officer at FCI-Bennettsville;<br>NFN Bowlings, Captain at FCI-Bennettsville; NFN Avery, Manager at FCI-Bennettsville; NFN Ausborn, Associate Warden of FCI-Bennettsville; NFN Pettiford, Warden of FCI-Bennettsville,<br><br>                    Defendants. | Civil Action No. 6:06-0911-GRA-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

The plaintiff, a federal prisoner proceeding *pro se*, seeks relief pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

The defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) on September 26, 2006. By order filed September 27, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On November 20, 2006, the plaintiff filed a response to the motion.

**FACTS PRESENTED**

The plaintiff was incarcerated at the Federal Correctional Institution ("FCI") Bennettsville from at least August 28, 2005, through December 5, 2005 (comp. ¶¶ 7, 37). On August 28, 2005, defendant Wells was processing visitors into the inmate visiting room at FCI Bennettsville (comp. ¶13). The plaintiff's mother, Carrie Manning, arrived to visit him, accompanied by the plaintiff's 15-year-old son, who was wearing shorts (comp. ¶ 9). FCI Bennettsville policy states that no one is allowed into the visiting room in shorts (comp. ¶19). Ms. Manning was required to clear the walk-through metal detector and have her personal belongings searched. This search can include being required to take off shoes so they can be scanned through the x-ray machine (comp. ¶¶ 11-12). Although Ms. Manning did visit, the teenager was not allowed to visit because of his attire (comp. ¶ 9).

The plaintiff made several complaints about his son's denial of entry and about his mother being forced to undergo security screening at the entry point (comp. ¶¶ 18-30). He spoke to defendant Ausborn and defendant Bowling about it *(id.)*. He filed complaints regarding this matter through the administrative grievance process (comp. ¶ 27). Ms. Manning was subjected to a drug test on October 8, 2005 (comp. ¶ 31). The defendants maintain this was a routine random ION scan[1] as part of inmate visitor processing. On December 5, 2005, the plaintiff was transferred to FCI Williamsburg, approximately 100 miles from FCI Bennettsville. (comp. ¶ 37).

The plaintiff claims Officer Kimberly Wells, Captain Denise Bowling, Case Manager Lisa Avery, former Associate Warden Shirley Ausborn and Warden Michael Pettiford violated his constitutional rights while he was housed at FCI Bennettsville. Specifically, the plaintiff asserts that the defendants subjected his mother to improper

---

[1] Ion spectrometry technology detects the presence of microscopic traces of illegal drugs on persons and their clothing (The Federal Bureau of Prisons' Drug Interdiction Activities, Report No. I-2003-002. Retrieved from http://www.usdoj.gov/oig/reports/BOP/e0302/final.pdf).

screenings prior to visitation at the prison, that they improperly denied his son entrance into the facility to visit with him, that they refused to answer his complaints about this matter, and then transferred him improperly in retaliation for those complaints. He seeks compensatory damages ($20,000 jointly and severally from defendants Wells and Bowling, and $5,000 jointly and severally from defendants Avery, and Ausborn), $25,000 in punitive damages ($5,000 from each defendant) and a variety of injunctive relief, including mandatory training for two defendants and removal from their positions.

The plaintiff's claims that defendant Wells was the officer who conducted the security screenings of the plaintiff's mother prior to visitation and refused his son entry into the visiting room. Defendant Bowling is the Captain at FCI Bennettsville and has supervisory responsibility over all correctional staff. According to the plaintiff, she had several conversations with him about his complaints (comp. ¶¶ 18-26). Defendant Avery is a case manager at FCI Bennettsville. The plaintiff asserts he asked her not to allow other staff to transfer him (comp. ¶33). There is no indication that she was the plaintiff's case manager or any allegation that she was involved in the decision to transfer him. Defendant Ausborn is a retired associate warden. According to the plaintiff, she had several conversations with him about his complaints concerning the pre-visitation screening of his mother (comp. ¶¶ 27-30). The final defendant is Warden Pettiford. The plaintiff alleges that Warden Pettiford did not respond to written correspondence from him (comp. ¶ 32).

The plaintiff is currently incarcerated at the FCI located in Williamsburg, South Carolina (def. m.s.j., ex. A , SENTRY Sentence Monitoring and Computation Data for plaintiff, p.1). He is serving a 292-month term of incarceration imposed by the United States District Court for the Eastern District of North Carolina (*id.*, pp. 1-2). This term was imposed for violations of 21 U.S.C. §§841(a)(1), Possession with Intent to Distribute Cocaine and Cocaine Base, and §846 (Conspiracy to Possess with Intent to Distribute

3

Cocaine) (*id.*). His term is currently anticipated to be completed on June 2, 2016, via good conduct time release (*id.*, p. 2).

## **APPLICABLE LAW AND ANALYSIS**

As matters outside the pleadings have been presented by the defendant and have not been excluded by this court, the motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) shall be treated as one for summary judgment pursuant to Rule 56. *See* Fed.R.Civ.P. 12(b)(6). Rule 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold

demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

   The defendants first argue that this court lacks subject matter jurisdiction over the plaintiff's claims against the individual defendants in their official capacities. This court agrees. Section 1983 allows a civil action to recover damages for deprivation of a constitutionally protected right. *Bivens,* 403 U.S. at 395-96. However, a suit against a federal agency or federal officer in his or her official capacity is actually a claim against the United States. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989). Such a suit lies only where the United States has waived sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The United States has not waived its sovereign immunity for constitutional misconduct. *See id.* at 477-78. Accordingly, the doctrine of sovereign immunity shields the United States from suit absent its consent to be sued. Therefore, this court lacks jurisdiction over the plaintiff's claims against the individual defendants in their official capacities and the constitutional claims against the United States, and those claims should be dismissed.

Next, the defendants argue that the plaintiff lacks standing to raise claims concerning the searches of his mother. This court agrees. Article III gives federal courts jurisdiction only over "cases and controversies," U.S. Const. art. III, § 2, cl. 1, and the doctrine of standing identifies disputes appropriate for judicial resolution. *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471-76 (1982). The doctrine of standing is an integral component of the case or controversy requirement. *Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir.1997). "A justiciable case or controversy requires a 'plaintiff [who] has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Planned Parenthood of South Carolina v. Rose*, 361 F.3d 786, 789 (4th Cir.2004) (alteration in original) (quoting *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976)). There are three components of constitutional standing: (1) the plaintiff must allege that he or she suffered an actual or threatened injury that is not conjectural or hypothetical, (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision must be likely to redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The party attempting to invoke federal jurisdiction bears the burden of establishing standing. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231(1990). Even though a plaintiff's standing cannot be examined without reference to the "nature and source of the claim asserted," *Warth v. Seldin*, 422 U.S. 490, 500 (1975), the court must ultimately determine whether a plaintiff has a sufficiently "personal stake" in the lawsuit to justify the invocation of federal court jurisdiction. *See Simon*, 426 U.S. at 38. "Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights . . . ." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

In this case, the plaintiff's claims concerning the security screening of his mother before she entered the visiting room at FCI Bennettsville relate solely to issues that concern the mother. The controversy, if any exists, is between his mother and the defendants. The plaintiff has no personal stake in the outcome of such a controversy, and he suffered no injury as a result of these searches as his mother was allowed to visit on both occasions. Accordingly, the plaintiff lacks standing, and this court is without jurisdiction to hear the claims concerning the search of the plaintiff's mother.

The plaintiff claims that the various defendants all failed to respond to his written correspondence. In order to state a viable claim pursuant to *Bivens*, the plaintiff must allege that he was deprived of his rights secured by the federal constitution or laws of the United States by a person acting under color of federal law. *Bivens*, 403 U.S. at 390-97. As there is no federal constitutional right or legal obligation for government officials to respond to correspondence, these allegations fail to state a claim. *See Watson v. McGinnis*, 964 F.Supp. 127, 130 (S.D.N.Y.1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."). The alleged failure of defendants Wells, Bowling, Avery, Ausborn, and Pettiford to respond to his letters is "simply not of constitutional magnitude." *Farr v. Blodgett*, 810 F.Supp. 1485, 1502 (E.D. Wash. 1993). These defendants were "under no compulsion to respond personally to plaintiff's correspondence and there is no evidence that [they] attempted to cover-up alleged misconduct." *Id.* Accordingly, these claims should be dismissed.

With regard to the plaintiff's claim that his constitutional rights were violated because his son was not allowed to visit due to the fact that he was wearing shorts, this claim also fails. As pointed out by the defendants, the claim challenges decisions of prison administrators as to the proper security required in the visiting area. Such a decision is properly left to the sound discretion of penal administrators. "The realities of running a penal institution are complex and unique to the prison environment." *Wetzel v. Edwards*,

635 F.2d 283, 288 (4th Cir. 1980).  Federal courts have traditionally been reluctant to interfere in the problems of prison administration.  Decisions made by prison administrators in their informed discretion have been accorded "wide-ranging deference" by the federal courts.  *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977).  Decisions as to which security protocols to subject inmate visitors to are exactly the sort of decisions which courts should defer to prison administrators.  The Bureau of Prisons' visiting regulations do not create a protected interest in visitation at all, much less with a specific person.  *Caraballo-Sandoval v. Honsted*, 35 F.3d 521, 525 (11th Cir. 1994).

The plaintiff also alleges the defendants retaliated against him.  Bare assertions of retaliation do not establish a claim of constitutional dimensions.  *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994).  In order to state a retaliation claim, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right."  *Id.*  In the first retaliation claim, the plaintiff alleges that his mother was subjected to a drug test in retaliation for his complaints about defendant Wells.  As set forth above, the plaintiff does not have standing to pursue this claim.  Further, even assuming he does have standing, the claim fails because the plaintiff has not pointed to any constitutional right that was violated in the manner in which the searches were conducted.  As noted by the defendants, all visitors to federal prisons are subject to search prior to entry into the facility.  *See* 28 C.F.R. § 540.51(f).

In his second retaliation claim, the plaintiff alleges that he was transferred to FCI Williamsburg in retaliation for filing Freedom of Information Act ("FOIA") requests sent "to the Regional Office" concerning the search of his mother (comp. ¶¶ 31, 34). According to the defendants, the "regional office" referenced by the plaintiff is located in Atlanta, Georgia. As argued by the defendants, there is no indication that the individual defendants in this case were even aware of the plaintiff's FOIA requests.  Further, there is no

constitutional right for a state or federal prisoner to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution. *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983); and *Lyons v. Clark*, 694 F. Supp. 184, 186-87 (E.D. Va. 1988) (collecting cases).

The defendants further claim that they are entitled to qualified immunity. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the defendants' motion for summary judgment be granted.

WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

March 12, 2007

Greenville, South Carolina